# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOE'L MADELYN DOERR,**

      **Plaintiff,**

v.                                                         **Case No: 6:20-cv-1027-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION[1]

Joe'l Madelyn Doerr ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income payments ("SSI"). Doc. No. 1. Claimant raises one argument challenging the Commissioner's final decision, and based on that argument, requests that the matter be reversed and remanded for further administrative proceedings. Doc. No. 30, at 21, 40. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed. *Id.* at 40. For the reasons stated herein, the final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 21, 24–25.

**I.     PROCEDURAL HISTORY.**

On July 5, 2016, Claimant filed applications for DIB and SSI benefits, alleging a disability onset date of December 31, 2014.  R. 15, 61, 75, 199, 201.[2]  Claimant's applications were denied initially and on reconsideration, and she requested a hearing before an ALJ.  R. 72, 86, 104, 122, 150–51.  An ALJ held a hearing on April 1, 2019, at which Claimant was represented by an attorney.  R. 41–59.  Claimant and a vocational expert ("VE") testified at the hearing.  *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  R. 15–33.  Claimant sought review of the ALJ's decision by the Appeals Council.  R. 196–98, 344–50.  On April 15, 2020, the Appeals Council denied the request for review.  R. 1–6.  Claimant now seeks review of the final decision of the Commissioner by this Court.  Doc. No. 1.

**II.    THE ALJ'S DECISION.[3]**

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a).  R. 15–33.[4]  The ALJ first found

---

[2] Claimant filed prior applications for DIB and SSI on July 31, 2014, both of which were denied initially and upon reconsideration.  R. 15, 76.  According to the joint memorandum, Claimant did not appeal the denial of those applications, *see* Doc. No. 30, at 1 n.1, and they are not otherwise the subject of the current appeal.

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.  Doc. No. 30.  Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

that Claimant met the insured status requirements of the Social Security Act through December 31, 2017. R. 17. The ALJ also concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of December 31, 2014. R. 18. The ALJ found that Claimant suffers from the following severe mental impairments: panic disorder, major depressive disorder, and substance abuse disorder. *Id.* However, the ALJ concluded that Claimant's physical impairments were not severe. R. 18–20. The ALJ further concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20–25.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> The claimant can perform simple tasks, and can maintain concentration, persistence, and pace for typical two-hour periods over an eight-hour workday and 40-hour work week. The claimant can tolerate brief and routine social interaction. The claimant can adjust to routine changes, avoid hazards, and travel independently.

R. 25.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work as a cook, telephone solicitor, telephone salesperson, or sous chef. R. 32. However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations including price marker, material handler, and kitchen helper dishwasher. R. 32–33. Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date of the decision. R. 33.

**III.    STANDARD OF REVIEW.**

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.    ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises one assignment of error (which includes several sub-arguments) regarding the ALJ's alleged failure to properly weigh and evaluate the medical opinions of Todd Gates, D.O., Claimant's treating psychiatrist, as it relates to Claimant's mental limitations.  Doc. No. 30, at 21–29.  *See* R. 515–28 (Exhibit 8F; January 1, 2015 Mental Capacity Assessment); R. 868–70 (Exhibit 23F: February 13, 2019 Medical

Opinion Re: Ability to Do Work-Related Activities (Mental).[5]  The Commissioner, for her part, maintains that the ALJ's decision is supported by substantial evidence.  *Id.* at 30–40.

An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  At the fourth step of the sequential evaluation process, the ALJ must determine Claimant's RFC.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case."  *Id.* (citations and quotations omitted).

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.  *Id.* § 404.1527(c).[6]  "These factors apply to both examining and

---

[5] Dr. Gates also opined as to Claimant's physical limitations, opinions to which the ALJ afforded "no weight."  R. 20.  *See* R. 518–19 (Exhibit 9F).  Claimant does not challenge that portion of the decision here.

[6] Claimant argues in the Joint Memorandum that the ALJ "discusses (but misapplies) the new regulations that set forth the process used to evaluate opinion evidence for claims filed before March 27, 2017."  Doc. No. 30, at 23–24.  Although the SSA regulations have been amended effective March 27, 2017, the new regulations related to medical opinions apply only to applications filed on or after that date.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.  Because Claimant filed her applications for benefits prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527, 416.927 govern here.  And although there is a new version of the regulation stating that its effective date is March 27, 2017, *see* 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) the provisions at issue are substantively identical to prior versions of the regulation.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (effective August 24, 2012 to March 26, 2017).  *See also* R. 29 (ALJ's decision noting the new regulations, but clearly stating that Claimant's application was filed prior to the effective date of the new regulations).

non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).[7]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). "The requisite 'good cause' is not provided by the report of a nonexamining physician because the opinion of such a person is entitled to little weight if it contradicts the opinion of the claimant's treating physician." *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987).

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight assigned with particularity or articulate the reasons in support of the assigned weight may prevent the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

As relevant here, Dr. Gates is Claimant's treating psychiatrist, who began treating Claimant in March 2014. *See* R. 473. Dr. Gates treated Claimant for diagnosed PTSD, major depressive disorder, panic disorder with agoraphobia, and polysubstance abuse and opiate dependence. *E.g.*, R. 468, 470–72, 563–93.

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

On January 1, 2015, Dr. Gates completed a Mental Capacity Assessment as it relates to Claimant and her diagnoses of PTSD and major depression, recurrent. R. 515–17 (Ex. 8F). On that form, Dr. Gates indicated that Claimant had moderate limitations[8] in the ability to understand and remember very short and simple instructions. R. 515. Dr. Gates further opined that Claimant had marked limitations[9] in her ability to remember locations and work-like procedures; understand and remember detailed instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; make simple work-related decisions; interact appropriately with the general public; and ask simple questions or request assistance. R. 515–16. Dr. Gates also opined that Claimant had extreme limitations[10] in her ability to carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday without interruptions from psychologically based symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently

---

[8] "Moderate" was defined as "The individual will have intermittent difficulty performing in this area. The individual can generally perform satisfactorily in this area but not always." R. 515.

[9] "Marked" was defined as "There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area." R. 515.

[10] "Extreme" was defined as "There is a major limitation in this area. There is no useful ability to function in this area." R. 515.

of others. R. 515–17. Dr. Gates further opined that Claimant would likely have more than four absences from work in an average month, noting that Claimant has greatly impaired concentration and chronic persistent pain. R. 516.

On February 13, 2019, Dr. Gates also completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) Form, for the time period beginning May 27, 2014 forward. R. 868–70 (Ex. 23F). As it relates to Claimant's ability to perform unskilled work, Dr. Gates opined that Claimant had a "limited but satisfactory"[11] ability to understand and remember very short and simple instructions; make simple work-related decisions; and ask simple questions or request assistance. R. 868. Dr. Gates further opined that Claimant was "seriously limited"[12] in her ability to remember work-like procedures; carry out very short and simple instructions; accept instructions and respond appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate precautions. *Id.* Dr. Gates indicated that Claimant was "unable to meet competitive standards"[13] in maintaining attention for a two-hour segment; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; performing at a consistent pace; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; or dealing with normal work stress. *Id.* Dr. Gates also stated that Claimant had "no useful ability to function"[14] in the following areas:

---

[11] "Limited but satisfactory" was defined as "your patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week. R. 868.

[12] "Seriously limited" was defined as "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week. R. 868.

[13] "Unable to meet competitive standards" was defined as "patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." R. 868.

[14] "No useful ability to function" was defined as "an extreme limitation, means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting." R. 868.

maintain regular attendance and be punctual within customary, usually strict tolerance; complete a normal workday and workweek without interruptions from psychologically based symptoms; or respond appropriately to changes in a routine work setting.  *Id.*

As it relates to Claimant's ability to do semiskilled and skilled work, Dr. Gates opined that Claimant was seriously limited in her ability to understand and remember detailed instructions; unable to meet competitive standards in her ability to set realistic goals or make plans independently of others; and had no useful ability to function in the areas of carrying out detailed instructions or dealing with stress of semiskilled or skilled work.  R. 869.  To support these assessments, Dr. Gates stated that Claimant is "hypervigilant with severe anxiety greatly impairing concentration," that Claimant is "very depressed," and "socially avoidant and house bound."  *Id.*

Regarding the aptitude needed to do particular types of jobs, Dr. Gates opined that Claimant was seriously limited in her ability to adhere to basic standards or neatness and cleanliness; travel to unfamiliar places; or use public transportation.  *Id.*  Dr. Gates further opined that Claimant was unable to meet competitive standards in her ability to interact appropriately with the general public or to maintain socially appropriate behavior.  *Id.*  To support these assessments, Dr. Gates stated that Claimant struggles in any interpersonal interactions and that she cannot concentrate to complete tasks.  *Id.*  Dr. Gates further indicated that Claimant would have difficulty working at a regular job or on a sustained basis because she is very depressed and because of her anhedonia.  *Id.*  Dr. Gates opined that Claimant's impairments would cause her to be absent from work more than four days per month.  *Id.*

In the decision, the ALJ provides a discussion of the medical evidence of record, and concludes that such evidence does not support greater limitations than those imposed in the RFC:

> Overall, this evidence does not support greater limitations than those described above.  While Dr. Gates noted that the claimant displayed deficiencies to

> concentration, she still performs a number of basic household tasks and helps take care of the house for her mother. The claimant testified that she did writing projects on a daily basis, and she could cook, clean the house, and was teaching her mother and her significant other to use a smartphone and computer (Hearing Testimony). Moreover, the claimant's function report described a number of hobbies, including, reading, painting, drawing, crafts, playing chess, and tinkering with electronics (Ex. 13E/5). The claimant also reported that she could follow instructions best if written (Ex. 13E/6). This activity level supports an ability to perform at least simple tasks through the day. Additionally, the claimant displayed a good capacity for interacting with her parents and treating providers. She testified to living with her mother and doing activities without any particular problems. She also managed to attend regular medical appointments, and particularly her primary care physician visits, on at least a monthly basis (e.g., Ex. 18F; 22F; Hearing Testimony). There is no objective evidence of her increased physical symptoms apart from her subjective complaints. The claimant still attends 12-step meetings. Providers did not note particular difficulty interacting with the claimant in treatment sessions (e.g., Ex. 7F; 12F; 15F; 22F/30).

R. 26–29. Regarding Dr. Gates's opinions on the Mental Capacity Assessment and Medical Opinion Re: Ability to Do Work-Related Activities (Mental) forms, the ALJ then states as follows:

> The undersigned has fully considered, and gives little weight to the check forms completed by Dr. Gates (e.g., Ex. 8F; 23F). The form asked about mental abilities, not B Criteria. The definitions were not those used by Social Security, asking about "noticeable difficulty" during percentages of the workday. Using the provided definitions, Dr. Gates checked that the claimant had at least serious limitations in understanding and carrying out simple instructions, with no ability to carry out more detailed instructions or deal with the stress of semi-skilled or skilled work (Ex. 23F/l-2). He added that the claimant could not interact appropriate with the public, that she struggled in any interpersonal interactions, and that she could not concentrate to complete tasks (Ex. 23F/2). Finally, he stated that she would miss more than four days per month due to her impairments (Ex. 8F; 23 F). This opinion is not consistent with or supported by the medical evidence of record. He noted the claimant's anxiety, depression, poor concentration, but Dr. Gates found that the claimant improved with medication, and had intact judgment and impulse control (e.g., Ex. 14F/3, 5; 16F/l; 20F/l).

> Dr. Gates regularly assigned estimates of Global Assessment of Functioning (GAF) scores between 55 and 75. The undersigned notes that the Commissioner has declined to endorse the GAF scale for "use in Social Security and SSI disability programs," and has indicated GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (2000). Further, GAF scores reflected an estimate of the claimant's level of functioning at that particular time, and was not an indication of overall functioning. Additionally, these scores, as well as the diagnostic codes and criteria, were not

> intended for forensic purposes, such as assessment of disability, competency, or the individual's control over such behavior (Diagnostic and Statistical Manual of Mental Disorders, 3rd Edition (DSM III), page 12; DSM III-R, page xxix; DSM IV-TM, page xxvii; DSM IV-TR, page xxxvii).  Axis V of the "Multiaxial System" [GAF scores] has been dropped from the most recent edition of the DSM.  The Introduction to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-V), published in 2013, notes at page 16 that the GAF scale represented the clinician's judgment of an individual's overall level of functioning on a hypothetical continuum of mental health-illness." Its exclusion from the current edition was recommended because of the scale's "conceptual lack of clarity" and "questionable psychometrics in routine practice."  While some mention was given to these scores, the undersigned must rely on evidence that demonstrates the claimant's overall ability to function.  The undersigned makes note that a GAF score of 55 historically indicated no more than moderate limitations to functioning according to the DSM-IV.  A score of 61 to 70 indicated no more than mild limitation, consistent with no severe impairment.  A score 71 and above was indicative of normal, with a score of 71-80 noted as indicative of no more than slight impairment; transient and expected reaction to stress.
>
> Dr. Gates wrote that the claimant "cannot concentrate to complete tasks" (Ex. 23F/2). Other provider examinations did not show diminished concentration or cognitive ability that would impair the claimant's ability to perform simple tasks (e.g., Ex. 12F; 15F; 19F/3, 7; 21F/3; 22F/l, 28).  As discussed above, the claimant routinely does a number of at least simple tasks around the house, including cooking, cleaning, reading, writing, and playing games (Ex. 13E; Hearing Testimony).  She has also been able to successfully interact with those outside her home, including regular primary care appointments, and attending 12-step meetings (e.g., Ex. 7F; 12F; 15F; 22F/30).  The claimant testified to writing a lot, and reading a lot.  She does everything asked of her to help around the house.  Dr. Gates did not provide any objective support for his opinion regarding the claimant's need to miss multiple days of work per month.  There was no discussion within his notes about work capacity or missing work.  The claimant has been caring for her mother for five years, and caring for her mother's significant other.  Thus, while Dr. Gates is an acceptable medical source, his opinion is afforded little weight overall.

R. 30–31. Thus, the ALJ appeared to give little weight to Dr. Gates's opinions for three primary reasons: (1) Dr. Gates's opinions were inconsistent with his own treatment notes, insofar as those treatment notes demonstrated that Claimant improved with medication, and had intact judgment and impulse control; (2) Dr. Gates's opinions were inconsistent with the findings of other medical providers, in that on examination, Claimant did not demonstrate diminished concentration or cognitive ability that would impair her ability to perform simple tasks; and (3) Claimant's daily

activities, including cooking, cleaning, reading, writing, playing games, and interacting with her mother, as well as going to doctor's appointments and attending 12-step meetings, were inconsistent with Dr. Gates's opinions.  *Id.*[15]

After assigning little weight to Dr. Gates's opinions, the ALJ discussed the opinions of the state agency consultants, giving them substantial weight:

> The undersigned has considered the administrative findings of fact made by the state agency physicians.   While the undersigned is mindful that these opinions are from non-examining and non-treating expert sources, they are not inconsistent with the medical evidence as a whole, and are therefore accorded substantial weight in determining the claimant's residual functional capacity identified above.   The agency medical and psychological consultants are recognized as highly qualified and are experts in Social Security disability evaluation (20 CFR 404.1527(f)(2)(i); 20 CFR 416.927(f)(2)(i)). Prior administrative findings made by state agency medical and psychological professionals regarding the nature and severity of an individual's impairments are granted probative weight as expert opinion evidence by a non-examining source (SSR 96-6p).  The undersigned, however, is not bound by any specific administrative finding (20 CFR 404.1527(e)(2)(i)).

R. 31.  Then, the ALJ discussed the report of William Eyring, Psy.D., made after consultative examination of Claimant, as well as the findings of the state agency consultants, Kevin Ragsdale, Ph.D. and B. Lee Hudson, Ph.D.  *Id.*   The ALJ found each of these opinions "consistent with and supported by the medical evidence of record."  *Id.*   And the ALJ afforded each of these opinions "substantial weight."  *Id.*

In the joint memorandum, Claimant argues that the ALJ's RFC determination conflicts with

---

[15] Claimant also suggests that the ALJ relied on Claimant's GAF scores to discount Dr. Gates's opinions.  Doc. No. 30, at 27.  However, upon review of the portion of the decision addressing the GAF scores, quoted above, the ALJ never placed any particular reliance on the GAF scores, merely noting that Dr. Gates had assessed such scores, but that "the Commissioner has declined to endorse the GAF scale."  R. 30. And while the ALJ stated the GAF scores that were assessed by Dr. Gates, and provided the interpretations of certain score ranges, the ALJ specifically stated that "[w]hile some mention was given to these scores, the undersigned must rely on evidence that demonstrates the claimant's overall ability to function."  *Id.* Accordingly, Claimant's suggestion that "the ALJ seems to have been persuaded by moderate GAF scores" is unpersuasive.

the opinions of Dr. Gates, and the ALJ erred in his consideration of Dr. Gates's opinions in several respects, including: (1) Dr. Gates's opinions are well supported by the record, including documentation of Claimant's symptoms of grief and depression; suicidal thoughts; hypervigilance; severe anxiety; hallucinations; questionable judgment; agoraphobia/social isolation; flashbacks/nightmares; insomnia; and poor focus/concentration; (2) the ALJ improperly gave significant weight to consultative examiners and non-examiners over Dr. Gates, who is a treating psychiatrist; and (3) the ALJ pointed to treatment notes demonstrating Claimant's improvement but ignored contrary evidence, pointed to her daily activities without demonstrating how those activities contradict Dr. Gates's opinions or demonstrate that she could perform full-time work in the public domain, and failed to consider the episodic nature of Claimant's mental impairments.  Doc. No. 30, at 21–29.

On review, although Claimant points to two unpublished decisions of the Eleventh Circuit to support her arguments,[16] the Court finds that a more recent opinion issued by the Eleventh Circuit (issued after the Joint Memorandum was filed in this case) controls the outcome here:  *Simon v. Comm'r, Soc. Sec. Admin.*, No. 19-14682, __ F. 4th __, 2021 WL 3556433 (11th Cir. Aug. 12, 2021), specifically as it relates to Claimant's last argument.[17]

---

[16] Claimant first points to *Martz v. Commissioner, Social Security Administration*, 649 F. App'x 948 (11th Cir. 2016), to argue that the ALJ erred in giving significant weight to the opinion of a non-examining medical expert, and that the opinions of a non-examining physician cannot provide good cause to discount a treating physician's opinion.  Claimant also relies on *Mace v. Commissioner, Social Security Administration*, 605 F. App'x 837 (11th Cir. 2015), to argue that the ALJ failed to adequately consider her mental limitations and failed to consider the episodic nature of her mental impairments.  *See id.*  While these cases are persuasive, *see generally Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007), as discussed herein, the Court finds the outcome of this case dictated by the Eleventh Circuit's holding in *Simon v. Comm'r, Soc. Sec. Admin.*, No. 19-14682, __F. 4th __, 2021 WL 3556433 (11th Cir. Aug. 12, 2021).

[17] The *Simon* opinion initially issued June 9, 2021, *see Simon v. Commissioner, Social Security Admin.*, 1 F.4th 908 (11th Cir. 2021), but the Court withdrew that opinion on rehearing and substituted the August 12, 2021 opinion in its stead.  *See Simon v. Comm'r, Soc. Sec. Admin.*, No. 19-14682, __ F. 4th __, 2021 WL 3556433, at *1 (11th Cir. Aug. 12, 2021).

In *Simon*, the Court addressed, among other things, whether the ALJ stated good cause to give little weight to the opinions of the claimant's treating psychiatrist, who had treated the claimant on more than thirty occasions across a four-year period. *Id.* at *8. During that time, the treating psychiatrist regularly documented the claimant's display of severe symptoms of mental illness, such as panic attacks, racing thoughts, volatile mood swings, paranoia, and self-isolation; all-in-all the claimant suffered from severe psychiatric disorders, which the treating psychiatrist concluded would impair the claimant's ability to function under stress, maintain focus, or interact appropriately with others in a work setting. *Id.* However, the ALJ gave little weight to the psychiatrist's opinions because they were inconsistent with: (1) the claimant's longitudinal history (which the Court construed as the treating psychiatrist's own treatment notes), (2) observations by the SSA consultants who examined the claimant, and (3) the claimant's testimony about daily tasks such as self-grooming or grocery shopping. *Id.* Upon consideration, the Eleventh Circuit found that each of these reasons was not supported by substantial evidence. *Id.* at *8–10. Based on the Eleventh Circuit's findings in *Simon*, the Court is constrained to reach the same outcome here.

As discussed above, here, the ALJ gave little weight to Dr. Gates's opinions for the same central reasons at issue in *Simon*: (1) Dr. Gates's opinions were inconsistent with his own treatment notes; (2) Dr. Gates's opinions were inconsistent with the findings of other medical providers; and (3) Dr. Gates's opinions were inconsistent with Claimant's daily activities. R. 30–31. Each of these reasons will be addressed in turn.

First, the ALJ gave little weight to Dr. Gates's opinions because Dr. Gates's treatment notes demonstrated that Claimant improved with medication and had intact judgment and impulse control. To the extent that the ALJ stated that Claimant had intact judgment and impulse control, much like *Simon*, such "highly generalized statements" do not provide a basis to discount the opinions of a

treating physician. *See Simon*, 2021 WL 3556433, at *10 ("[W]hen a claimant has been diagnosed with the types of mental and emotional disorders at issue here,[18] highly generalized statements that the claimant was 'cooperative' during examination, that he exhibited 'organized speech' and 'relevant thought content,' or that he showed 'fair insight' and 'intact cognition,' ordinarily will not be an adequate basis to reject a treating physician's opinions."). This is particularly true where, as here, those same records relied on by the ALJ to demonstrate "intact judgment and impulse control" also state that Claimant "remains very depressed" and "highly anxious," that her concentration remains "very poor" or "greatly impaired," that Claimant is "very withdrawn with increased paranoid ideation," and that Claimant "remains mostly housebound with feelings of helplessness and hopelessness." *See* R. 730 (Ex. 14F/3), 732 (Ex. 14F/5), 738 (Ex. 16F/1), 797 (Ex. 20F/1). *See also Simon*, 2021 WL 3556433, at *9.

Moreover, in *Simon*, the Court held that "isolated entries in . . . treatment notes indicating that [the claimant] was at times stable on his meds, without more, cannot constitute or contribute to good cause to reject [the treating psychiatrist's] opinions." *See id.* In this case, while the ALJ stated that Claimant "improved with medication," the records cited in support instead state that "medicines are adequately adjusted," that "current medicines are providing ongoing benefit," or that medications "will be continued." *See* R. 730 (Ex. 14F/3), 732 (Ex. 14F/5), 738 (Ex. 16F/1). Only one of the records cited by the ALJ states that Claimant reported "sustained benefits" from medications. *See* R. 797 (Ex. 20F/1). Given that isolated notations that a claimant suffering from mental impairments is "stable on his meds" cannot constitute good cause to reject a treating psychiatrist's opinion, *see Simon*, 2021 WL 3556433, at *9, the Court cannot conclude that the

---

[18] The mental and emotional disorders at issue in *Simon* included diagnoses of bipolar disorder, depressive disorder, generalized anxiety disorder, panic disorder, and intermittent explosive disorder. *Simon*, 2021 WL 3556433, at *3, 9.

ALJ's finding that Claimant "improved with medication" provides good cause here.

The next reason provided by the ALJ to give Dr. Gates's opinions little weight fares no better. The ALJ stated that Dr. Gates's opinions were inconsistent with the findings of other medical providers, in that on examination, Claimant did not demonstrate diminished concentration or cognitive ability that would impair her ability to perform simple tasks. R. 30. Again, under *Simon*, such "highly generalized statements" do not provide a basis to discount the opinions of a treating psychiatrist. *See Simon*, 2021 WL 3556433, at *9–10 (finding ALJ erred in relying on consulting doctor's observations that the claimant displayed satisfactory communication, cooperation, participation, and eye contact; had "grossly intact" memory; exhibited good calculation abilities; had good cognitive function, executive function, thought process, and abstract reasoning; had a good fund of information; and displayed fair insight and judgment in giving little weight to treating psychiatrist opinions). *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019) ("It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing."). Nor does the ALJ's decision appear to "take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *See Simon*, 2021 WL 3556433, at *10.

The third reason provided by the ALJ to discount Dr. Gates's opinions was that Claimant's activities of daily living contradicted such opinions. In this regard, the ALJ pointed to Claimant's cooking, cleaning, reading, writing, playing games, and interacting with her mother, as well as going to doctor's appointments and attending 12-step meetings. R. 30–31. Without further explanation from the ALJ as to how these activities demonstrate a "genuine inconsistency" with Dr. Gates's opinions, under *Simon*, the ALJ has failed to provide good cause to give little weight to Dr. Gates's

opinions on this basis.  *See Simon*, 2021 WL 3556433, at *11 ("[T]he ALJ found it significant that Simon could feed himself, dress himself, and shop.  But here again, the ALJ failed to identify any genuine inconsistency with Dr. Turner's findings.  In our view, it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities.  None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis.  Without some reasonable explanation from the ALJ as to why completing basic household chores is inconsistent with a finding of disability, this evidence was not sufficient to discredit Dr. Turner.").  *See also Schink*, 935 F.3d at 1264 ("The ALJ expressed his belief that Schink 'was able to participate in normal activities of daily living.'  But the daily activities upon which the ALJ relied were mostly, if not all, solitary activities such as watching television, walking the dog, and cooking.  These activities do not discount the treating physicians' opinions that Schink suffered significantly from mental impairments, particularly when he interacted with others.").

In sum, pursuant to *Simon*, the ALJ failed to provide good cause reasons, supported by substantial evidence, to give little weight to Dr. Gates's opinions.  Thus, the Court is constrained to reverse and remand this matter for further administrative proceedings.[19]  Given that reversal is necessary on the bases discussed herein, the Court declines to address Claimant's remaining arguments.  *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

---

[19] In remanding this matter for further administrative proceedings, the Court is not suggesting that the ALJ reach any particular conclusion.  Instead, remand is necessary so that the ALJ can properly address the medical opinions and other evidence of record, regardless of the conclusion ultimately reached.

## V.     CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk is **DIRECTED** to enter judgment in favor of Claimant and against the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on August 26, 2021.

*Leslie R. Hoffman*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record